UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER MIRANDA, on behalf of real party in interest M.M. and real party in interest S.M.**<br><br>**VERSUS**<br><br>**DAVID ALEXANDER, individually and in his official capacity as Superintendent of the Ascension Parish School Board, ET AL.** | **CIVIL ACTION**<br><br>**NO. 21-535-JWD-EWD** |

## RULING AND ORDER

This matter comes before the Court on *Plaintiffs Consolidated Application for a Temporary Restraining Order* (Doc. 2) filed by *pro se* Plaintiff Jennifer Miranda, on behalf of her two minor children, M.M. and S.M. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of Plaintiff and is prepared to rule. For the following reasons, Plaintiff's motion is denied.

**I.       Relevant Factual Background**

This suit arises out of a challenge to the constitutionality of a mask mandate implemented by the Ascension Parish Board of Education. (*See Compl.*, Doc. 1.) Plaintiff Jennifer Miranda initiated this action on behalf of her two minor children M.M. and S.M. (*Id.* ¶¶ 1–2.) M.M. and S.M. are both students at an Ascension Parish public school. (*Id.* ¶ 1.)

Defendants are: (1) the Ascension Parish Board of Education ("School Board"); (2) David Alexander, in his individual capacity and in his official capacity as Superintendent of the Ascension Parish School District; and (3) Robyn P. Delaney, David S. Duplechein, Julie Blouin, Marty Bourgeois, John D. Murphy, John Defrances, Taft Kleinpeter, Jared Bercegeay, Louis Lambert, Troy J. Gautreau, Sr., Patricia Russo, all individual elected officials sued in their

individual capacity and in their capacity as members of the School Board (collectively, "Defendants"). (*Id.* ¶¶ 3–15.)

On August 4, 2021, the School Board enacted a mask mandate for all students, teachers, and faculty. (Doc. 2-1 at 12.)[1] The policy states:

> **FACE COVERINGS ON SCHOOL PROPERTY (INDOORS OR OUTDOORS):** Pursuant to Proclamation #137 JBE2021 (https://gov.louisiana.gov/assets/Proclamations/2021/137 JBE2021StateofEmergency.pdf) issued by Governor John Bel Edwards, all individuals shall wear a face covering when indoors on Ascension Public Schools property, as well as on school buses. Individuals are required to wear a mask over the nose and mouth upon entry to any building and remain properly masked while traveling about hallways, corridors, and common spaces inside of the building or in classrooms. Masks are not required when outdoors.

(*Id.*)

On August 6, 2021, Plaintiff submitted religious exemption forms to the Principal of her children's school to opt out of the mask mandate. (*Compl.* ¶ 17, Doc. 1.) In response, the Principal stated, "they are not accepting religious exemptions[.]" (*Id.* (citing Ex. L, Doc. 1-1 at 14).)

Subsequently, on August 17, 2021, the School Board held a meeting which allowed for "open discussion of the [mask] mandate." (*Id.* ¶ 39.) M.M. spoke at this meeting and "brought to the attention of the school board that he had acquired sores on both of his ears as result of wearing a mask at school that was too tight." (*Id.*)

> M.M. also stated that his sores didn't heal until around Christmas. Mrs. Miranda clarified that the sores healed during Christmas break since a mask was not being worn during Christmas break. M.M. also informed the APSB that he was receiving negative dojo marks when he would take his mask off because the sores on the back of his ears were causing unbearable pain. M.M. stated to APSB "The points mean that you're doing bad things, so I don't think I was really doing anything bad" in reference to removing his mask to relieve the pain. M.M. concluded his speech saying "and no more masks[.]"

(*Id.*)

---

[1] The Policy is attached to Plaintiff's Motion for TRO. (Doc. 2-1 at 12.)

2

Plaintiff alleges that the School Board's mask policy causes immediate and irreparable health risks to students, staff, and the community at large. (*Compl.* at 9.) In support, Plaintiff relies on the Affidavit of Stephen E. Petty. (*Id.* ¶ 18 (citing Ex. O, Doc. 1-1 at 17-22).) Mr. Petty is an expert in the field of Industrial Hygiene, who has testified as to the "futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19[.]" (*Id.*)

Plaintiff further alleges that her two children have been harmed by having to comply with the mask mandate, which is "not only unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase." (*Id.* ¶ 50.)

Based on the above, Plaintiff claims that Defendants violated her Fifth and Fourteenth Amendment rights to life, liberty, and property when they implemented the mask mandate, along with various provisions of the Louisiana Constitution. (*Id.* ¶¶ 51–69.) More specifically, Plaintiff alleges that (1) her children have a constitutionally protected interest in not being subjected to the School Board's mask mandate; (2) the School Board's policy unlawfully deprives Plaintiff's children of their constitutionally protected rights without due process of law; and (3) the School Board impeded on the fundamental right of her children to public education. (*Id.*)

On September 14, 2021, Plaintiff filed her Complaint seeking to enjoin Defendants "from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law[.]" (*Compl.* at 18.) On that same day, she filed her Motion for TRO, requesting that the Court enjoin Defendants from continued

enforcement of the Policy. (Doc. 2.)

## II. Legal Standard

*Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

To obtain a temporary restraining order, a party must prove "(1) a substantial likelihood of success on the merits, (2) a substantial threat that Plaintiff[ ] will suffer irreparable injury if the [TRO] is not granted, (3) that the threatened injury outweighs the threatened harm to the Defendants, and (4) that granting the [TRO] will not disserve the public interest." *Gumns v. Edwards*, 2020 WL 2510248, at *3 n.18 (M.D. La. May 15, 2020) (Dick, C.J.) (citing *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (quotation and citation omitted); *Justin Indus. v. Choctaw Sec., L.P.*, 920 F.2d 262 (5th Cir. 1990)). A temporary restraining order is an "extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989); *RW Dev., LLC v. Cuningham Grp. Architecture, Inc.*, 2012 WL 3258782, at *2 (S.D. Miss. Aug. 8, 2012).

The Court will address each factor in turn, taking into consideration the higher burden Plaintiff bears due to the nature of her requested TRO. *See Hargett*, 348 F. Supp. 3d at 769.

## III. Plaintiff's Motion for TRO (Doc. 2)

Plaintiff moves the court for a temporary restraining order seeking to enjoin Defendants from continuing to enforce the mask mandate. (Doc. 2 at 1.) Plaintiff argues that all four prongs of the standard for obtaining a TRO weigh in her favor. (*Id*. at 13.)

Plaintiff contends that the School Board's mask mandate violates her children's "core constitutional right to personal autonomy and bodily integrity." (*Id*. at 9, 10-11.) As such, the first factor is met because Plaintiff is likely to succeed on the merits.

The second factor—the risk of irreparable harm—is also met because the "actual or threatened violation of core constitutional rights is presumed irreparable by the federal courts." (*Id*. at 6, 11.) In addition, "Plaintiffs M.M. and S.M. being exposed to potential physical injury and death may constitute irreparable harm justifying preliminary injunctive relief." (*Id*. at 12.) Further, the third and fourth factors also weigh in her favor as the issuance of a TRO in this case is "in the public interest." (*Id*. at 13.)

### IV. Discussion

As an initial matter, the Court acknowledges that the TRO was filed *pro se*. (*See* Doc. 2 at 13.) Federal courts generally hold *pro se* petitioners to less stringent standards than those required of petitioners represented by counsel. *See Ominski v. Northrop Grumman Shipbuilding, Inc.*, 466 F. App'x 341, 345 (5th Cir. 2012) (affording the plaintiff "the leeway to which she is entitled as a *pro se* petitioner"); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding the allegations of a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"). Nevertheless, Plaintiff is advised that, "a *pro se* litigant is not exempt . . . from compliance with the relevant rules of procedural and substantive law." *NCO Financial Systems, Inc. v. Harper–Horsley*, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (citing *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981)).

#### 1. Likelihood of Success on the Merits

The Court begins its analysis by evaluating the first prong of the TRO standard that asks whether Plaintiff has a strong likelihood of success on the merits of her claims. *Lambert v. Bd. of*

*Comm'rs of Orleans Levee Dist.*, 2006 WL 8456316, at *8 (E.D. La. Mar. 22, 2006). The Court finds that Plaintiff does not have a strong likelihood of success on the merits. As previously noted, Plaintiff alleges a due process violation of her Fourteenth Amendment rights. In relevant part, the Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Plaintiff has failed to meet that burden. Meticulously reviewing her Motion, "the Court neither sees where Plaintiff has been denied a life, liberty, property, or fundamental right; nor how wearing a mask impedes her children's property interest in school attendance." *P.M. v. Mayfield City School District Board of Education,* 2021 WL 4148719, at *3 (N.D. Ohio Sept. 13, 2021) (concluding that a mask mandate similar to the one at issue here did not violate the right to education) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975) (broadly recognizing that students have a property right to education under the Due Process Clause); *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (noting that education is not a fundamental right within the Constitution)); *see also Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) ("Nor have we accepted the proposition that education is a 'fundamental right,' ... which should trigger strict scrutiny when government interferes with an individual's access to it.").

With respect to Plaintiff's substantive due process argument, there is no fundamental constitutional right to not wear a mask. *Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926, at *38 (N.D. Ind. July 18, 2021); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, 2021 WL

6

1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places."); *United States v. Berglund*, 2021 WL 1589548 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights."); *see also Cangelosi v. Sheng,* 2020 WL 5960682, at *2-3 (E.D. La. Oct. 8, 2020); *Stewart v. Justice*, 2021 WL 472937 (S.D. W. Va. Feb. 9, 2021); *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202 (M.D. Fla. 2021).

As such, numerous courts have held that mask mandates do not run afoul of the Fourteenth Amendment. *See P.M. v. Mayfield City School District Board of Education,* 2021 WL 4148719, at *3 (N.D. Ohio Sept. 13, 2021); *Resurrection School v. Gordon*, 507 F. Supp. 3d 897, 900 (W.D. Mich. 2020); *aff'd Resurrection School v. Hertel*, 2021 WL 3721475, at *17 (6th Cir. Aug. 23, 2021) (concluding that "[w]e nonetheless conclude that Plaintiffs' substantive-due-process claim is without merit."); *Kelly v. ImagineIF Library Entity*, 2021 WL 2444663, at *4 (D. Mont. June 15, 2021); *Whitfield*, 2021 WL 1964360, at *2; *Denis v. Ige*, 2021 WL 1911884, at *12 (D. Haw. May 12, 2021); *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *2-3 (N.D. Ga. May 12, 2021); *Forbes v. City of San Diego*, 2021 WL 843175, at *3-6 (S.D. Cal. Mar. 4, 2021); *Shelton v. City of Springfield*, 497 F. Supp. 3d 408, 414 (W.D. Miss. 2020); *Klaassen*, 2021 WL 3073926, at *38; *Tandon v. Newsom*, 2021 WL 411375, at *27-44 (N.D. Cal. Feb. 5, 2021). Therefore, the Court determines that Plaintiff's claim fails on the merits because she has not proven a Fourteenth Amendment violation.

### B.  Irreparable Injury

The second prong of the TRO standard asks the Court to consider whether Plaintiff would suffer irreparable injury if the TRO is not granted. *Lambert*, 2006 WL 8456316, at *6-7. "Perhaps

the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2013). Irreparable harm means "harm for which there is no adequate remedy at law," such as monetary damages. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013).

Plaintiff must show that the threatened harm is "more than mere speculation." *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("[An injunction] will not be granted against something merely feared as liable to occur at some indefinite time in the future."); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("[T]he injury must be both certain and great; it must be actual and not theoretical."). There must be more than "an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Therefore, "[a] presently existing actual threat must be shown." *Morrell v. City of Shreveport*, 536 Fed. Appx. 433, 435 (5th Cir. 2013) (alteration in original) (quoting *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001)). Plaintiff has failed to make the required showing.

In her TRO Motion, Plaintiff fails to establish any personal harm to her children from the mask mandate. In her Complaint, she alleges in conclusory fashion, without medical or other substantiation, that her child M.M. "acquired sores on both his ears as a result of wearing a mask at school that was too tight … [and these sores] healed during Christmas break[.]" (*Compl.* ¶ 39, Doc. 1.)  No such allegation is found in the TRO motion.

Attached to her Complaint is an incomplete affidavit of an industrial hygienist Stephen Petty,[2] who alludes to "possible" negative health effects from wearing a mask, including possible increased respiratory rate and blood pressure. (Doc. 1-1 at 20-21, ¶ 37.) The risk of that possibility is not quantified. Nowhere in either the Complaint or the TRO motion is there support for the proposition that Plaintiff's children have suffered or will likely suffer a risk of this negative health effect. Indeed, Plaintiff attaches to her Complaint a transmittal email dated August 6, 2021 (Doc. 2-1 at 2), where she forwarded a form requesting an exemption for her children from having to wear masks on medical grounds (APSB Face Covering Accommodation Request Form, Doc. 2-1 at 4). In the box titled "Nature of Qualifying Disability", Plaintiff has written "HIPPA VIOLATION". (*Id.*) In the box for the Physician's Signature (which is required), she has written: "See Governor's Proclamation." Plaintiff has failed to show any potential personal harm to her children from the mask mandate.

Moreover, Plaintiff has also not established that the harm is *irreparable*. "A movant must demonstrate that "irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiff's unsupported allegation regarding sores on her son's ears from wearing the mask "too tight" does not qualify.

Plaintiff cites to Stephen Petty, an Industrial Hygienist, to establish the health risks of wearing a mask. Even if the partial affidavit could be considered by the Court, other than the vague and non-quantified "possible" risks discussed above, "it appears Mr. Petty's testimony primarily

---

[2] The Court notes that the affidavit lacks the formal requirements for this Court to consider it. *See J.P. Morgan Sec. LLC v. Manne,* No. 16-818, 2016 WL 7223358, at *2 (M.D. La. Dec. 12, 2016). (deGravelles, J.). An affidavit submitted in support of a TRO "must be made on personal knowledge and meet the other standards applicable to affidavits supporting an application for a preliminary injunction under Rule 65(a)." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2952 (3d ed. 2016). "Affidavits are appropriate on a preliminary-injunction motion." 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed. 2016). "Preliminary injunctions frequently are denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65." *Id*. Here, the first 10 paragraphs of the affidavit are omitted from the submission, with the affidavit beginning at paragraph 11.

relates to the *effectiveness* of masks, rather than their potential health risks." *See P.M v. Mayfield City School District Board of Education,* 2021 WL 4148719, at *2 (N.D. Ohio Sept. 13, 2021). This Court agrees.

In sum, Plaintiff's Motion fails the second prong because: (1) she has not shown that her children are suffering or are likely to suffer a real and actual harm; (2) her claim hinges on an affidavit which is not in proper form but, even if considered, (a) is based on data which is vague and non-specific and is not tied to potential harm to Plaintiff's children and (b) relates more to whether masks are effective, rather than the potential consequences of wearing one.

### C. Substantial Harm to Others and Public Interest

The third and fourth factors of the TRO standard, respectively, require the Court to consider whether the injunction would cause substantial harm to others, and whether the public interest would be served by the issuance of a TRO. *Gumns*, 2020 WL 2510248, at *3 (citations omitted). The Court will simultaneously address both factors.

The state's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial. *Roman Catholic Diocese of Brooklyn v. Cuomo*, ⸺ U.S. ⸺, 141 S. Ct. 63, 67, 208 L. Ed. 2d 206 (2020) (per curiam) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."). Wearing a mask in public places serves that interest. Indeed, at this point in the pandemic, a nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it. *See Scientific Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, Ctrs. For Disease Control and Prevention, (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html ("Experimental and epidemiological data support community masking to reduce the

10

spread of SARS-CoV-2. The prevention benefit of masking is derived from the combination of source control and personal protection for the mask wearer."); *Scientific Brief: Transmission of SARS-CoV-2 in K-12 Schools and Early Care and Education Programs – Updated*, Ctrs. For Disease Control and Prevention, (July 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/transmission_k_12_schools.html. ("SARS-CoV-2 transmission in the community is correlated with the amount of infections in schools. When community rates of COVID-19 are high, there is an increased likelihood that SARS-CoV-2 will be introduced to, and potentially transmitted within, a school [ ] setting.").

Accordingly, the Court determines that enjoining the School Board's mask policy would potentially cause substantial harm to the Parish's students, teachers, and faculty through community spread of COVID-19, which could potentially cause serious illness and death to them as well as though with whom they come into contact. Therefore, Plaintiff's Motion fails the third prong of the TRO standard.

Finally, with respect to the fourth factor, based on the grave risks associated with the ongoing COVID-19 pandemic and the increased risks to the school children of Ascension Parish and the public of granting the injunction, the Court finds that the public interest would not be served by enjoining the mask mandate. Rather, enjoining the mask mandate would pose an increased risk of quarantines, illness, and long-term learning disruptions. Accordingly, the Court finds that Plaintiff's Motion fails the fourth prong of the TRO standard.

On the present record, the Court declines to issue an TRO. As soon as Defendants make an appearance, the Court will hold a status conference to discuss the issue of a preliminary injunction hearing.

**V.    Conclusion**

11

Accordingly,

**IT IS ORDERED** that *Plaintiffs Consolidated Application for a Temporary Restraining Order* (Doc. 2) filed by Plaintiff Jennifer Miranda on behalf of her two minor children M.M. and S.M. is **DENIED**.

Signed in Baton Rouge, Louisiana, on September 24, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**