## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNIFER MIRANDA, on behalf of** | **CIVIL ACTION** |
| **real party in interest M.M. and** | |
| **real party in interest S.M.** | **NO. 21-535-JWD-RLB** |

**VERSUS**

**DAVID ALEXANDER, ET AL.**

### <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 24, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JENNIFER MIRANDA, on behalf of                    CIVIL ACTION
real party in interest M.M. and
real party in interest S.M.                       NO. 21-535-JWD-RLB

**VERSUS**

**DAVID ALEXANDER, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss, Motion to Strike, and Motion for

Attorney's Fees. (R. Doc. 19). The motion is opposed. (R. Doc. 22). Defendants filed a Reply. (R.

Doc. 24). Plaintiff filed a Surreply without seeking leave of court. (R. Doc. 26).

Also before the Court is Plaintiff's Motion to Change Status from Pro Se to Sui Juris and

Affidavit ("Motion to Change Status"). (R. Doc. 21). The motion is opposed. (R. Doc. 23).

## I.    Background

This suit arises out of a challenge to the constitutionality of a mask mandate implemented by

the Ascension Parish Board of Education. (R. Doc. 1 ("Complaint"); R. Doc. 7 ("Amended

Complaint")).[1] Plaintiff Jennifer Miranda initiated this action on behalf of her two minor children

M.M. and S.M., who were both students at an Ascension Parish public school at the time the lawsuit

was filed. (R. Doc. 7 at 17).[2] Plaintiff names as defendants: (1) the Ascension Parish Board of

Education ("School Board"); (2) David Alexander, in his individual capacity and in his official

capacity as Superintendent of the Ascension Parish School District; and (3) Taft Kleinpeter, Troy J.

Gautreau Sr., Robyn Delaney, David Scott Duplechein, Julie Blouin, Marty Bourgeois, John D.

Murphy, John DeFrances, Jared Bercegeay, Louis Lambert, and Patricia Russo, all individual

---

[1] Plaintiff filed the Amended Complaint prior to service of the original Complaint, as allowed as a matter of course under Rule 15(a)(1).
[2] The Court refers to Jennifer Miranda as "Plaintiff" in the sense that she is appearing in the lawsuit for the purpose of representing her minor children.

elected officials sued in their individual capacity and in their capacity as members of the School

Board (collectively, "Defendants"). (R. Doc. 7 at 18-20).

On August 2, 2021, Governor John Bel Edwards issued a state-wide mask mandate in

Louisiana. *See* Proclamation Number 137 JBE 2021 (effective August 4, 2021). On August 4, 2021,

the School Board enacted a mask mandate for all students, teachers, and faculty:

> **FACE COVERINGS ON SCHOOL PROPERTY (INDOORS OR OUTDOORS):** Pursuant to Proclamation #137 JBE 2021 issued by Governor John Bel Edwards, all individuals shall wear a face covering when indoors on Ascension Public Schools property, as well as on school buses. Individuals are required to wear a mask over the nose and mouth upon entry to any building and remain properly masked while traveling about hallways, corridors, and common spaces inside of the building or in classrooms. Masks are not required when outdoors.

(R. Doc. 2-1 at 12).

On August 6, 2021, Plaintiff submitted religious exemption forms to the Principal of her

children's school to opt out of the mask mandate, but was told by the Principal that "they are not

accepting religious exemptions[.]" (R. Doc. 7 at 21-22).

On August 17, 2021, the School Board held a meeting which allowed for "open discussion

of the [mask] mandate." (R. Doc. 7 at 22). M.M. spoke at this meeting and "brought to the attention

of the school board that he had acquired sores on both of his ears as result of wearing a mask at

school that was too tight." (R. Doc. 7 at 22).

> M.M. also stated that his sores didn't heal until around Christmas. Mrs. Miranda clarified that the sores healed during Christmas break since a mask was not being worn during Christmas break. M.M. also informed the APSB that he was receiving negative dojo marks when he would take his mask off because the sores on the back of his ears were causing unbearable pain. M.M. stated to APSB "The points mean that you're doing bad things, so I don't think I was really doing anything bad" in reference to removing his mask to relieve the pain. M.M. concluded his speech saying "and no more masks[.]"

(R. Doc. 7 at 22).

Among other things, Plaintiff alleges that the School Board's mask policy causes immediate and irreparable health risks to students, staff, and the community at large. (R. Doc. 7 at 29). In support, Plaintiff relies on the Affidavit of Stephen E. Petty. (R. Doc. 7 at 29 (citing Ex. O of the Complaint, R. Doc. 1-1 at 17-22)). Mr. Petty is purportedly an expert in the field of Industrial Hygiene, who has testified as to the "futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19[.]" (R. Doc. 7 at 29).

Plaintiff further alleges that her two children have been harmed by having to comply with the mask mandate, which is "not only unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase." (R. Doc. 7 at 37).

Based on the above, Plaintiff filed her Complaint on September 14, 2021. (R. Doc. 1). The Complaint seeks a ruling declaring that the mask mandate is void and enjoining Defendants "from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law[.]" (R. Doc. 1 at 18). On that same day, Plaintiff filed a Consolidated Application for a Temporary Restraining Order, requesting that the Court enjoin Defendants from continued enforcement of the mask mandate. (R. Doc. 2).

On September 24, 2021, the district judge denied the Motion for Temporary Restraining Order, finding that Plaintiff had not satisfied any of the four prongs required to obtain a TRO. *Miranda on behalf of M.M. v. Alexander*, No. 21-535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021) (R. Doc. 5). First, the district judge held that "Plaintiff's claim fails on the merits because she has not proven a Fourteenth Amendment violation." *Id.* at *4. Second, the district judge further held that Plaintiff had not established a substantial threat of irreparable injury because "(1) she has not shown

that her children are suffering or are likely to suffer a real and actual harm; (2) her claim hinges on an affidavit which is not in proper form but, even if considered, (a) is based on data which is vague and non-specific and is not tied to potential harm to Plaintiff's children and (b) relates more to whether masks are effective, rather than the potential consequences of wearing one." *Id*. at *6. Third, the district judge held that "enjoining the School Board's mask policy would potentially cause substantial harm to the Parish's students, teachers, and faculty through community spread of COVID-19, which could potentially cause serious illness and death to them as well as those with whom they come into contact." *Id*. Fourth, the district judge held that "based on the grave risks associated with the ongoing COVID-19 pandemic and the increased risks to the school children of Ascension Parish and the public of granting the injunction, . . . the public interest would not be served by enjoining the mask mandate [, which] would pose an increased risk of quarantines, illness, and long-term learning disruptions." *Id*.

On October 4, 2021, Plaintiff filed an Amended Complaint. (R. Doc. 7).[3] Plaintiff now seeks recovery under 10 overlapping claims brought under both federal and state law for the alleged deprivation of her minor children's rights to life, liberty, and property when the School Board implemented the mask mandate:

- Count I – Violation of Individual Right to Dignity (La. Const. Art. I, § 3)
- Count II – Violation of Individual Right to Humane Treatment (La. Const. Art. I, § 20)
- Count III – 42 U.S.C. § 1983 – Violation of Procedural Due Process (Fifth and Fourteenth Amendments)
- Count IV – 42 U.S.C. § 1983 – Violation of Substantive Due Process (Fourteenth Amendment)
- Count V – Violation of Substantive Due Process (La. Const. Art. I, § 22)
- Count VI – Americans with Disability Act of 2008 – Violation of Subchapter III Subpart B, 36.201(a)
- Count VII – Americans with Disability Act of 2008 – Violation of Subchapter III Subpart B, 36.202(a)
- Count VIII – Violation of Louisiana Constitution Art. 101
- Count IX – Violation of the Nuremberg Code (1947)

---

[3] Plaintiff amended the Complaint prior to service, as allowed as a matter of course under Rule 15(a)(1).

- Count X – Violation of 28 U.S.C. § 1343 – Civil Rights and Elective Franchise

(R. Doc. 7 at 37-44). Among other things, Plaintiff alleges that (1) her children have a

constitutionally protected interest in not being subjected to the School Board's mask mandate; (2)

the School Board's policy unlawfully deprives Plaintiff's children of their constitutionally protected

rights without due process of law; and (3) the School Board impeded on the fundamental right of

her children to public education. As in the original Complaint, the relief prayed for by the Plaintiff

includes injunctive and declaratory relief with respect to the implementation and enforcement of the

mask policy, as well as an award of attorney's fees. (R. Doc. 7 at 45-46). Plaintiff does not

expressly seek any monetary damages.

On October 26, 2021, Governor Edwards lifted the requirement for a state-wide mask

mandate and allowed local public school districts to affirmatively opt out of the mask mandate if

certain isolation and quarantine policies are adopted. *See* Proclamation Number 203 JBE 2021

(effective October 27, 2021). (*See* R. Doc. 19-4 at 1-3). In light of this proclamation, effective

October 27, 2021, face coverings for staff, students, and visitors became optional in Ascension

Parish Public Schools. (R. Doc. 11) (*See* R. Doc. 19-4 at 4-5).

On November 2, 2021, the district judge denied Plaintiff's Motion for Reconsideration of

Order on Motion for Temporary Restraining Order (R. Doc. 8) as moot in light of the lifting of the

mask mandate. (R. Doc. 11).

On December 27, 2021, Defendants filed their Motion to Dismiss, Motion to Strike, and

Motion for Attorney's Fees. (R. Doc. 19). Defendants seek (1) dismissal under Rule 17(b)(3), and

applicable Louisiana procedural law, for lack of procedural capacity to sue on behalf of her minor

children while proceeding without counsel, (2) dismissal for lack of Article III standing and

mootness; (3) dismissal based on Eleventh Amendment Immunity; (4) dismissal for failure to state a

claim; (5) an order striking the Affidavit of Stephen E. Petty from the record; and (6) an award of

costs and attorney's fees under 42 U.S.C. § 1988(b).

On January 7, 2022, Plaintiff filed her Motion to Change Status, which appears to seek legal

significance in the change of her "pro se" filing status to a "sui juris" filing status. (R. Doc. 21).

## II.    Law and Analysis

### A.    Standards for *Pro Se* Litigants

As an initial matter, the Court acknowledges that this action, and Plaintiff's pleadings,

motions, and briefs, were filed *pro se* (i.e., without the benefit of counsel). Federal courts generally

hold *pro se* petitioners to less stringent standards than those required of petitioners represented by

counsel. *See Ominski v. Northrop Grumman Shipbuilding, Inc.*, 466 F. App'x 341, 345 (5th Cir.

2012) (affording the plaintiff "the leeway to which she is entitled as a *pro se* petitioner"); *Haines v.

Kerner*, 404 U.S. 519, 520-21 (1972) (holding the allegations of a *pro se* complaint to "less

stringent standards than formal pleadings drafted by lawyers"). Nevertheless, "a *pro se* litigant is

not exempt . . . from compliance with the relevant rules of procedural and substantive law." *NCO

Financial Systems, Inc. v. Harper-Horsley*, No. 07-4247,  2008 WL 2277843, at *3 (E.D. La. May

29, 2008) (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

### B.    Plaintiff's Motion to Change Status

Through this motion, Plaintiff seeks to be recognized as "Jennifer Miranda, Sui Juris, Free,

Natural Person, All Rights Reserved, and Sovereign Child of the Living God Almighty." (R. Doc.

21 at 1).[4] Among other things, Plaintiff suggests that she is bound only by her "God-given, secured

---

[4] Much of the language used in Plaintiff's motion appears reflective of the Sovereign Citizens Movement.. "The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *Jackson v. Massachusetts*, No. 18-11609, 2018 WL 5017919, at *1 (D. Mass. Oct. 15, 2018) (citing *United States v. Ulloa*, No. 11-5368, 511 Fed. App'x 105, 107, 2013 WL 535776, at n. 1. (2d Cir. 2013); *Gauthier v. Kirkpatrick*, 2013 WL 6407716, at *17 n.18 (D. Vt. Dec. 9, 2013) (noting courts have described sovereign citizen ideology as "completely without merit," "patently frivolous," and "having no conceivable validity in American law") (citations omitted)); *see also United States v. Williams*, No. 419-cr-089, 2020 WL 762540, at *3 (S.D. Ga. Feb. 14, 2020) ("Defendant's filings, to the extent they are comprehensible, bear all of the hallmarks of the 'sovereign citizen' theory that has been consistently rejected by the federal courts as an

and guaranteed Rights, pursuant to the Declaration of Independence and the Constitution for the

United States of America as ratified in 1791 with the Articles of the Amendments." (R. Doc. 21 at

2). Plaintiff asserts that she is "not a citizen, resident, subject, taxpayer, et al., of the municipal

corporations and private corporations doing business in the Parish of Ascension, Prairieville, State

of Louisiana . . . ." (R. Doc. 21 at 2). Plaintiff further asserts that the "municipal corporations or

private corporations doing business as Parish of Ascension, Louisiana, State of Louisiana or of any

other municipal corporation; possess no interest in [her] Private Property, possess no authority to

make claims against [her] Private Properties, and possess no authority or rights, whatsoever, over

[herself], or [her] Private Properties." (R. Doc. 21 at 2). Plaintiff also asserts that her minor

children, M.M. and S.M. are her "personal private property." (R. Doc. 21 at 2).[5]

    The motion is meritless. There would be no legal significance in holding that Plaintiff can

proceed "sui juris" as opposed to "pro se." The terms are not mutually exclusive:

> The term *sui juris* is a Latin term and translates as "of one's own right; independent."
> In the legal field, *sui juris* is used to signify someone who has reached the age of
> majority or someone who possesses full civil rights.[6] Pro se is also a Latin term and
> it translates as "[f]or oneself; on one's own behalf." In the legal field, pro se is used

---

[5] Defendants correctly respond that children are not chattel, and, instead, are persons who hold rights under the U.S.
Constitution. (R. Doc. 23 at 8-9) (citing cases and legal sources). Among other things, Defendants cite U.S. Supreme
Court decisions providing that minor children, in certain circumstances, have been found to possess the same
constitutionally protected rights and liberties as adults. *See, e.g.*, *Parham v. J.R.*, 442 U.S. 584, 600 (1979) ("It is not
disputed that a child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for
medical treatment and that the state's involvement in the commitment decision constitutes state action under the
Fourteenth Amendment."). The Court interprets Plaintiff's assertions that her children are her "personal private
property" to be hyperbolic and irrelevant to the issues that must be addressed in resolving the instant motions.

[6] Given Plaintiff's religion-based arguments, Defendants suggest that Plaintiff may be seeking designation as "sui juris"
consistent with the "Code of Canons of the Eastern Churches, a set of laws that are independent of state and federal law,
which are followed by the Catholic Church, the Roman Catholic Church, and those in communion with it." (R. Doc. 21
at 7). The Court need not speculate on Plaintiff's religious beliefs. It is sufficient to hold that Plaintiff is proceeding "pro
se" for the purposes of representing her minor child in this lawsuit regardless of the assertions in Plaintiff's motion with
respect to proceeding "sui juris" in the alternative.

to indicate a litigant who is proceeding without the assistance of a lawyer. By their plain meanings, the two terms convey different ideas and have no effect on each other.

*Winsey v. Nationstar Mortg. LLC*, No. 17-979, 2017 WL 2931381, at *1 (M.D. Fla. July 10, 2017) (quoting and citing Black's Law Dictionary (10th ed. 2014)). "Federal courts . . . have regarded parties as appearing *pro se* even where the parties have asserted that they are appearing *sui juris* rather than *pro se*." *Hall v. Washington Mut. Bank*, No. 10-01606, 2010 WL 11549664, at *3 (C.D. Cal. July 7, 2010) (citing cases). Courts have repeatedly found no significance in a parties' designation as proceeding "sui juris" as opposed to "pro se." *See*, *e.g.*, *Jackson v. Massachusetts*, No. 18-11609, 2018 WL 5017919, at *1 (D. Mass. Oct. 15, 2018) ("To the degree [the Plaintiff] maintains that he is not a *pro se* litigant but a "sui juris" party, his position is facially deficient. His legal position is erroneously based on a misguided reading of statutes and other authority that are common to claims asserted by sovereign citizen groups.").

Having reviewed Plaintiff's Motion to Change Status, as well as the arguments set forth in Plaintiff's Response to Defendants' Motions (R. Doc. 22), it appears that Plaintiff is primarily seeking a holding that she can represent the interests of her minor children without counsel. The Court will address that issue below. The instant motion is subject to denial because there is no legal basis for granting any "change of status" sought by Plaintiff to proceed "sui juris" as opposed to "pro se."

C.    **Defendants' Motion to Dismiss**

1.    **Lack of Procedural Capacity**

In seeking dismissal of this action, Defendants first argue that Plaintiff lacks procedural capacity under Rule 17(b)(3) to represent her minor children, M.M. and S.M. Defendants further argue that Plaintiff cannot represent those minor children *pro se* in federal court. (R. Doc. 19-1 at 2-3).

Rule 17 states that the "capacity to sue or be sued shall be determined by the law of the state in which the district is held." Fed. R. Civ. P. 17(b)(3). Under Louisiana law, only "[a] competent major and a competent emancipated minor have the procedural capacity to sue." La. C.C. Proc. Art. 681. As unemancipated minors, M.M. and S.M. lack procedural capacity to maintain this suit under Louisiana law. La. C.C.P. art. 683(A). For an unemancipated minor to bring a lawsuit, "[a]ll persons having parental authority over [the] unemancipated minor must join as proper plaintiffs to sue to enforce a right of the minor, unless a joint custody implementation order otherwise applies. Nevertheless, with permission of the court, any person having parental authority may represent the minor whenever the other person having parental authority fails or refuses to do so." La C.C.P art. 683(B). "When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualification is presumed, unless challenged by the defendant by the timely filing of the dilatory exception. When so challenged, the plaintiff shall prove his authority or qualification on the trial of the exception." La. C.C.P. art. 700. Accordingly, Plaintiff (as the sole parental authority suing on behalf of the minor children M.M. and S.M.) bears the burden of proof to establish sole parental authority to maintain this lawsuit.

In addition, the general rule in federal court is that while parties generally have the right to proceed *pro se* under 28 U.S.C § 1654, a party cannot proceed *pro se* on behalf of another individual, including a spouse or minor children. *Sprague v. Dep't of Fam. & Protective Servs.*, 547 F. App'x 507, 508-09 (5th Cir. 2013) (citing *Johnson v. Lufkin Daily News,* 48 Fed. App'x 917 (5th Cir. 2002) (citing § 1654); *Morgan v. Texas*, 251 Fed. App'x 894, 896 n. 2 (5th Cir. 2007) (noting that because the plaintiff was proceeding *pro se,* she did not have the authority to assert claims on behalf of the minor child); *Aduddle v. Body*, 277 Fed. App'x 459 (5th Cir. 2008) (holding that even assuming the grandfather was the legal guardian of the grandchild, because he was not an attorney, he did not have the authority to represent her on a *pro se* basis)); *see also Chatman v. Mississippi*

*High Sch. Athletics Ass'n*, 552 F. App'x 335, 337 (5th Cir. 2014) ("[W]ith limited exceptions not applicable here, a pro se, non-lawyer parent or guardian may not represent the interests of her minor child [in a Section 1983 action]."); *JD1 by & through Raskin v. Dallas Indep. Sch. Dist.*, No. 21-2429, 2021 WL 5396001, at *3 (N.D. Tex. Nov. 17, 2021) ("[T]he law does not allow parents like Ms. Raskin to lodge claims and sue pro se on behalf of their children. This is because individuals who do not have a law license may not represent other parties, even minor children, on a next-friend basis.") (citing *Sprague*, 547 F. App'x at 508). An exception to this general rule applies where parents bring an appeal for supplemental security income benefits under Title XVI of the Social Security Act where the parent has a sufficient interest in the case and meets basic standards of competence. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). That exception is inapplicable to this case.

In response to Defendants' argument that Plaintiff lacks procedural capacity to represent her children in this action, Plaintiff merely states that Defendants' arguments are "not relevant to case number 3:21-cv-00535 and [do] not match verbiage from memorandum." (R. Doc. 22 at 1). It appears that Plaintiff is referencing a scrivener's error in Defendants' Motion to Dismiss, which at one point references the minors G.C. and C.C. (*See* R. Doc. 19 at 2; *see also* R. Doc. 19-1 at 17 n.23 (referencing the minor E.R.).[7] Plaintiff also asserts, with no explanation, that she has procedural capacity to represent her minor children, without counsel, under Rule 18(c)(1)(A) of the Federal Rules of Civil Procedure.[8] (R. Doc. 22 at 6-7). Plaintiff does not otherwise challenge the law or arguments raised by Defendants.

---

[7] It appears that these scrivener's errors were made while defense counsel was simultaneously drafting briefs defending two other similar actions involving minors challenging the mask mandate at issue. *See G.C. and C.C., two minors, by and through their parent, Samantha Dolen-Cartwright v. Ascension Parish School Board, et al.*, No. 21-527-JWD-RLB (M.D. Sept. 13, 2021) and *E.R., a minor, by and through his parent, Allison Roush v. Ascension Middle School District Board of Education, et al.*, No. 21-528-JWD-RLB (M.D. Sept. 13, 2021).

[8] There is no Rule 18(c)(1)(A) in the Federal Rules of Civil Procedure. Plaintiff does not explain the relevance of her citation to Rule 18, which concerns the joinder of claims, to the issues regarding her procedural capacity.

Having considered the arguments of the parties, the Court concludes that Plaintiff has not met her burden of proving she has procedural capacity to act as the legal representative on behalf of her minor children under Rule 17(b)(3) and the applicable Louisiana law. To the extent Defendants' filings contain scrivener's errors with respect to the initials of the two minor children, it is nevertheless clear that Defendants are challenging Plaintiff's procedural capacity as representative of her own minor children in this action, M.M. and S.M. Plaintiff has not demonstrated that she has sole parental authority over the minor children to bring this lawsuit or otherwise obtained permission of the Court to proceed as sole parental authority. Even if she had done so, Plaintiff cannot proceed on behalf of her minor children without the benefit of counsel. *See Sprague*, 547 F. App'x at 508-09. Regardless of whether Plaintiff assigns meaning to her request to proceed "sui juris," it nevertheless remains the general rule that parents may not represent their children *pro se* in actions of this nature.

Based on the foregoing, this action should be dismissed because Plaintiff lacks procedural capacity to represent her minor children without the benefit of counsel. *See A.R. by & through Roberts v. Kansas Sch. Bd. Ass'n*, No. 21-2492, 2022 WL 103292, at *4 (D. Kan. Jan. 11, 2022) ("[T]he court finds that Plaintiff Roberts has failed to establish standing for any federal claims on her own behalf and, because she is proceeding pro se, she cannot proceed on any federal claims on behalf of her minor children.").

Even if Plaintiff could demonstrate that she has procedural capacity to represent her minor children, or even if an attorney was enrolled, this action is nevertheless subject to dismissal for the reasons stated below.

### 2.     Subject Matter Jurisdiction

Defendants seek dismissal of this action under Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that federal question jurisdiction under 28 U.S.C. § 1331 is unavailable, any

declaratory and injunctive relief sought is moot, and Plaintiff otherwise lacks standing. (R. Doc. 19-1 at 7-17). Defendants further assert that the Court lacks subject matter jurisdiction in light of their immunity under the Eleventh Amendment of the U.S. Constitution. (R. Doc. 19-1 at 17-20).

"Federal courts have limited jurisdiction, and a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 Fed. App'x 369, 374 (5th Cir. 2007) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The district court may base its determination as to its subject matter jurisdiction on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* "The burden of establishing subject matter jurisdiction in federal courts rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). The Court must dismiss an action if at any time it determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### i.      Federal Question Jurisdiction

In the context of opposing Plaintiff's Motion to Change Status, Defendants argue that it is unclear what basis Plaintiff is asserting with respect to this Court's subject matter jurisdiction, given that the parties are not diverse and Plaintiff appears to deny the authority and application of federal law enacted since 1791. (*See* R. Doc. 23 at 2-6).

Plaintiff's Complaint and Amended Complaint both assert that this Court has subject matter jurisdiction by citing 28 U.S.C. § 20. (R. Doc. 1 at 8; R. Doc. 7 at 20). No such statute appears to

have been codified.[9] Nevertheless, federal question jurisdiction exists under 28 U.S.C. § 1331 "if

there appears on the face of the complaint some substantial, disputed question of federal law." *In re*

*Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch.*

*Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). While Plaintiff raises contradictory positions with the

respect to the applicability of federal law, she has nevertheless raised claims under federal law,

including 42 U.S.C. § 1983. This is sufficient for an exercise of subject matter jurisdiction under 28

U.S.C. § 1331.[10]

###### ii.    Eleventh Amendment Immunity

Defendants move the Court to dismiss the action for lack of subject matter jurisdiction on

the basis that Plaintiff brings claims against state officials acting in their official capacities that are

barred in light of the immunity provided by the Eleventh Amendment to the U.S. Constitution. (R.

Doc. 19-1 at 17-21).

The Eleventh Amendment bars a state from being sued in federal court by its own citizens,

citizens of other states, or foreign nations. U.S. Const. Amend. XI; *Seminole Tribe v. Florida*, 517

U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. Of*

*Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). "When a state agency is named the defendant, the

Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has

waived its immunity." *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273,

---

[9] Defendants assert that this purported statute "pertains to Judicial Administration of criminal justice information systems." (R. Doc. 23 at 2 n. 2). That appears to be a reference to 28 C.F.R. § 20. Given the additional quotes in Plaintiff's allegation of subject matter jurisdiction, it appears that Plaintiff is actually attempting to cite Louisiana Constitution, Art. I, § 20 ("No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense."). At any rate, as discussed below, the Court has federal question jurisdiction under 28 U.S.C. § 1331 over Plaintiff's claims raised under federal law.

[10] Section 1343 also provides this Court with original jurisdiction over Plaintiff's claims to the extent they seek "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(a)(3). The Court will discuss any exercise of supplemental jurisdiction under 28 U.S.C. § 1367 over state law claims below.

281 (5th Cir. 2002). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'" *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing *Howlett v. Rose*, 496 U.S. 356, 365, (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

The State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)); La. R.S. § 13:5106(a). Under the *Ex Parte Young* doctrine, however, "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735-36 (5th Cir. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception "rests on a legal fiction, the premise that a state official is not the State for sovereign-immunity purposes when a federal court commands [him or her] to do nothing more than refrain from violating federal law." *Id.* at 168. (citations omitted). For a suit to proceed under this doctrine, it must be a suit seeking declaratory or injunctive relief and: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id*. (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). This is true, even where an injunction may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

The burden of proof in demonstrating that the School Board, and its members, are an "arm of the State of Louisiana" falls on the Defendants. *Skelton v. Camp*, 234 F.3d 292, 297 (5th Cir. 2000). Defendants assert, with no legal citation, that there is no dispute that the School Board is an

"arm of the State of Louisiana," and, therefore, entitled to assert Eleventh Amendment Immunity. (R. Doc. 19-1 at 18; R. Doc. 24 at 4). The Fifth Circuit has held, however, that a Parish of the State of Louisiana is not an "arm" of the State of Louisiana. *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 478-480 (5th Cir. 2007). More specifically, the Fifth Circuit has expressly held that a "parish school board" is not an "arm" of the State within the meaning of the Eleventh Amendment. *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 132 (5th Cir. 1986) ("Louisiana school boards . . . are not entitled to eleventh amendment immunity."); *see Sch. Bd. of Par. of St. Charles v. Roxco, Ltd.*, No. 01-0359, 2001 WL 283094, at *1 (E.D. La. Mar. 21, 2001) ("[T]he School Board of the Parish of St. Charles . . . is not entitled to Eleventh Amendment immunity in the present action because it is not an arm of the State of Louisiana."). Accordingly, Defendants have not demonstrated that they are entitled to Eleventh Amendment immunity.

Defendants also argue that they have immunity from civil liability in light of certain restrictions enacted by the Louisiana legislature with respect to statements made by school employees while in the course and scope their employment or regarding any injuries related to the COVID-19 pandemic. (R. Doc. 19-1 at 20) (citing La. R.S. 17:439(A) ("Except as otherwise provided in this Section, no person shall have a cause of action against any school employee based on any statement made or action taken by the school employee provided that the action or statement was within the course and scope of the school employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board."); La R.S. 17:439.1(A) ("Notwithstanding any other provision of law to the contrary, public and nonpublic schools, public and nonpublic school systems, public and nonpublic school governing authorities, and charter school governing authorities, and the officers, employees, and agents thereof shall not be held liable for any civil damages for injury or death resulting from or related to actual or alleged exposure to COVID-19 or

acts undertaken in the effort to respond or adapt to the COVID-19 public health emergency.")).

These Louisiana statutes do not provide immunity from civil lawsuits in federal court as a matter of

the Court's subject matter jurisdiction. At most, these statutes provide immunity from certain civil

actions brought under state law, but not any claims raised under federal law. *See* U.S. Const. art. VI,

cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance

thereof . . . ., shall be the supreme Law of the Land. . . .").[11]

Given the foregoing, Defendants have not demonstrated that they are entitled to Eleventh

Amendment Immunity. The Court will, therefore, determine whether an exercise of subject matter

jurisdiction is proper in light of Defendants' arguments regarding Article III standing and mootness.

### iii.    Standing and Mootness

Article III of the United States Constitution extends the judicial power of the United States

to actual "cases" and "controversies." U.S. Const. art. III, § 2; *see Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The justiciability doctrines of

standing, mootness, political question, and ripeness 'all originate in Article III's "case" or

"controversy" language.' *Choice Inc. of Texas v. Greenstein*, 691 F.3d at 715 (quoting

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

To have Article III standing, the Plaintiff must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant (causation), and (3) that is likely to be

redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560 (1992); *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

(2000)). The plaintiff who files a complaint in federal court, as the party invoking federal

jurisdiction, bears the burden of establishing these elements. *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493

---

[11] As discussed below, the Court finds that Plaintiff has not stated a federal claim for which relief can be granted. The Court takes no position on whether La R.S. 17:439 or La R.S. 17:439 bar civil liability with respect to Plaintiff's claims raised under state law.

U.S. 215, 231 (1990)). In order to satisfy this burden at the pleading stage the plaintiff must clearly

allege facts to satisfy each element of Article III standing. *Id.* (quoting *Warth*, 422 U.S. at 518).

Moreover, the plaintiff must demonstrate standing separately for each form of relief that he seeks.

*Friends of the Earth*, 528 U.S. at 185 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). When

a party cannot establish the standing requirements imposed by Article III, courts lack subject matter

jurisdiction over the case. *Bell v. American Traffic Solutions, Inc*., 371 Fed. App'x 488, 489 (5th

Cir. 2010); *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009).

Plaintiff's arguments in support of a finding of standing, to the extent comprehensible,

suggest that Defendants have "failed to prove" various issues, including the scientific and social

values of mask wearing, suggesting that the mask mandate constitutes "unforgivable war crimes"

and a "medical experiment," all while citing passages of the Holy Bible as legal support. (R. Doc.

22 at 9-17). These arguments have no bearing on whether Plaintiff has Article III standing or

whether the claims raised in the pleading are moot.

Nevertheless, the alleged injury in fact is the deprivation of the minor children's rights under

federal law by requiring them to wear masks while attending public school.[12] This alleged injury in

fact can be fairly traceable to the School Board in issuing a mask mandate requiring public school

children to wear masks in the school setting. A favorable judicial decision declaring the mask

mandate void and enjoining the enforcement of the mask mandate would redress the alleged

violation. That Courts have found that mask mandates do not violate certain federal rights goes to

---

[12] However, in the context of addressing whether plaintiffs had standing to challenge a Texas state law prohibiting local governmental entities from imposing mask mandates, the Fifth Circuit concluded that the plaintiffs likely failed to show that the enforcement of the statute resulted in an injury in fact. *E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021) ("The risks of contracting COVID-19 for these plaintiffs are certainly real, but the alleged injury to plaintiffs *from the enforcement of GA-38* is, at this point, much more abstract. This is so because the binary choice envisioned by the district court—either stay home or catch COVID-19—is a false one: it wholly elides the various accommodations available to the plaintiffs (e.g., distancing, voluntary masking, class spacing, plexiglass, and vaccinations) to ensure a safer learning environment, regardless of GA-38's prohibition of local mask mandates. Beyond whether plaintiffs allege a 'concrete' injury, they also likely fail to show any actual or imminent injury as a result of the enforcement of GA-38.").

the merits of Plaintiff's claims, not whether Plaintiff has standing to raise such claims on behalf of her minor children.[13]

The Court will turn to whether the injunctive and declaratory relief sought in this action is moot given that the mask mandate was lifted effective October 27, 2021. "It is well-settled, that mootness is a threshold jurisdictional inquiry." *Louisiana Environmental Action Network [LEAN] v. U.S. E.P.A.*, 382 F.3d 575, 580-81 (5th Cir. 2004) (citing *Deakins v. Monaghan,* 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."). "In general, a claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *LEAN*, 382 at 581 (citing *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (per curiam); *Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries,* 177 F.3d 380, 383 (5th Cir. 1999). "If a dispute has been resolved, or if it has evanesced because of changed circumstances, it is considered moot." *LEAN*, 382 at 581 (citing *American Medical Assoc. v. Bowen,* 857 F.2d 267 (5th Cir. 1988)). In certain circumstances, there is "an exception to the general principle of mootness in instances where some issues of a case have become moot "but the case as a whole remains alive because other issues have not become moot." *LEAN*, 382 at 581 (quoting *ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345 (5th Cir. 1981)).

Some courts have held that the lifting of a mask mandate renders an action challenging the mask mandate moot because the action is no longer premised upon an actual case or controversy recognized under Article III of the U.S. Constitution. *See*, *e.g.*, *Zinman v. Nova Se. Univ., Inc*., No. 21-60723, 2021 WL 4025722, at *9-11 (S.D. Fla. Aug. 30, 2021) (constitutional challenge of Palm Beach's mask mandate became moot, to the extent the plaintiff sought declaratory and injunctive relief, upon the issuance of Governor's Executive Order precluding municipalities from enacting

---

[13] To the extent Plaintiff seeks relief on her own behalf, however, it would be proper to find that Plaintiff lacks standing. Plaintiff "does not allege that the policy has mandated that she wear a mask for any particular time" and, accordingly, has not suffered any "concrete and particularized injury" to form the basis of an Article III injury in fact. *See Roberts*, 2022 WL 103292, at *4.

such ordinances), *report and recommendation adopted sub nom. Zinman v. Nova Se. Univ.*, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021); *Kelly v. Imagineif Libr. Entity*, No. 21-6, 2021 WL 2444663, at *2-3 (D. Mont. June 15, 2021) (plaintiff's claims challenging statewide mask mandate and seeking declaratory and injunctive relief were moot where Governor lifted statewide mask mandate one month after the filing of the lawsuit).

The Court recognizes that a defendant's "voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012); *see Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 324 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). A case can nevertheless be rendered moot if "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) any interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quotation omitted). Here, there is arguably no reasonable expectation that the School Board will reinstate a public school mask mandate given that Governor Edwards has lifted the requirement for a state-wide mask mandate and has allowed local school districts to affirmatively opt out of the public school mask mandate if certain isolation and quarantine policies are adopted. *See* Proclamation Number 203 JBE 2021 (effective October 27, 2021). (*See* R. Doc. 19-4 at 1-3). The lifting of the mask mandate in Ascension Parish public schools in light of this proclamation arguably constitutes an interim event that has "completely and irrevocably eradicated the effects" of Plaintiff's alleged constitutional violations. (*See* R. Doc. 19-4 at 4-5).

That said, the Court further recognizes that the U.S. Supreme Court has addressed mootness in the context of COVID-19 restrictions, finding that the lifting of pandemic orders does not necessarily render the relief sought as moot. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, ---U.S. ---, 141 S. Ct. 63, 68–69 (2020) (plaintiffs' challenge to a state COVID-19 pandemic order

limiting attendance at religious services was not moot where the state had relaxed the attendance

limitations in response to declining COVID-19 cases because the plaintiffs "remain under a constant

threat" that the state will reimpose the attendance limits without notice and "bar individuals in the

affected area from attending services before judicial relief can be obtained"); *Tandon v. Newsom*, ---

U.S. ---, 141 S. Ct. 1294, 1297 (2020) (plaintiffs' challenge to a state COVID-19 pandemic order

limiting gatherings, including gatherings for at-home religious activities, was not moot even though

the defendants modified the guidance in the course of the litigation); *but see Spell v. Edwards*, No.

20-00282, 2022 WL 131249, at *1 (M.D. La. Jan. 12, 2022) ("The Supreme Court's most recent

jurisprudence cannot save Plaintiffs' claims for injunctive relief because the challenged restrictions

have expired on their own terms and there is no indication whatsoever that crowd-size limits on

indoor assembly will be reinstated.").

Given the ever-evolving government responses to the current pandemic, as well as the

decisions by the Supreme Court, this action presents an ongoing "case or controversy" under Article

III. The Court will address the merits of Plaintiff's federal claims below.

###        3.        Failure to State a Claim

###              i.        Legal Standards for Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal

standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion,

a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to

relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint

states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In

determining whether it is plausible that a pleader is entitled to relief, a court does not assume the

truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

Having considered the pleadings as a whole and the arguments of the parties, the Court concludes that Plaintiff has failed to allege a claim under federal law. The Court further concludes that any further amendment would be futile with respect to the federal claims already alleged.

### ii.    42 U.S.C. § 1983

Counts IV and V respectively seek relief through 42 U.S.C. § 1983 for violations of procedural and substantive due process as guaranteed under the Fifth and Fourteenth Amendments of the U.S. Constitution. (R. Doc. 7 at 39-40).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws, shall be liable to the party injured." 42 U.S.C. § 1983. To state a claim under section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of

state law." *Lauderdale v. Texas Dep't of Criminal Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted).

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The U.S. Supreme Court has interpreted the Due Process Clause as containing guarantees of both "procedural" and "substantive" due process. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (citing cases).

In denying Plaintiff's Motion for Temporary Restraining Order, the district judge held that Plaintiff failed to meet her burden of establishing a procedural or substantive due process claim under the Fourteenth Amendment. *Miranda*, 2021 WL 4352328, at *4 (M.D. La. Sept. 24, 2021). Having reviewed Plaintiff's pleadings, and the arguments of the parties, the Court now similarly concludes that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because Plaintiff cannot establish violation of the Due Process Clause of the Fourteenth Amendment.[14]

### a.    Procedural Due Process

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

---

[14] The Due Process Clause of the Fifth Amendment is inapplicable in this action, as it applies to the federal government. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

In the context of raising a procedural due process claim, Plaintiff alleges that her children have the "constitutionally protected interests in the benefits that come from the not being subject to the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits." (R. Doc. 7 at 39). Plaintiff alleges that her children were not provided "notice or meaningful opportunity to be heard as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion." (R. Doc. 7 at 39-40). Defendants do not raise any specific arguments addressing Plaintiff's allegations that her children were not provided due process required by law prior to the issuance of the mask mandate. The Court notes, however, that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981).

The Court need not decide whether Defendants provided adequate opportunity to be heard prior to issuance of the mask mandate because the mask mandate does not violate the  minor children's "property right" in a public education. The U.S. Supreme Court has recognized that students have a procedural due process "property right" to a public education. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Plaintiff does not allege, however, that her minor children were actually denied the right to attend school and receive a public education. Indeed, Plaintiff alleges that her children have been denied a right to public education absent certain health precautions – like a mask mandate – instituted during a global pandemic. No such property right is recognized. *See B.P. by & through L.P. v. N. Allegheny Sch. Dist.*, No. 21-1112, 2022 WL 114075, at *5 (W.D. Pa. Jan. 12, 2022) (plaintiff failed to show a constitutionally protected property interest "for a public education in a safe and healthy environment" with respect to a procedural due process claim challenging the lifting of a mask mandate); *Gunter v. N. Wasco Cty. Sch. Dist. Bd. of Educ.*, No. 21-1661, 2021 WL 6063672, at *11 (D. Or. Dec. 22, 2021) ("Plaintiffs fail to show that they have a constitutionally-

23

protected interest in being allowed to refuse to let their children wear masks while at school."); *P.M. v. Mayfield City School District Board of Education*, No. 21-1711, 2021 WL 4148719, at *3 (N.D. Ohio Sept. 13, 2021) ("[T]he Court neither sees where Plaintiff has been denied a life, liberty, property, or fundamental right; nor how wearing a mask impedes her children's property interest in school attendance.").

In short, Plaintiff's procedural due process claim fails because Plaintiff's minor children's property rights in attending public school have not been violated based on the allegations in the pleadings.

### b.    Substantive Due Process

Plaintiff's claims with respect to substantive due process are grounded on the minor children's alleged "fundamental right to a public education and to an education in a safe and healthy environment." (R. Doc. 7 at 41).

Substantive due process under the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Where a fundamental right is implicated, the Court will apply "strict scrutiny," meaning that the law will not be upheld unless the government demonstrates that the law is necessary to further a compelling governmental interest and has been narrowly tailored to achieve that interest. *Reno v. Flores*, 507 U.S. 292, 302, 113 (1993). If a right is not fundamental, however, then the Court will apply a "rational basis" review, which will deem the law constitutional unless the plaintiff can demonstrate that it is not reasonably related to a rational government interest. *See Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (citation omitted).

The U.S. Supreme Court has held that the right to public education is not a "fundamental right" for the purposes of substantive due process. *See San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (noting that education is not a fundamental right within the

Constitution); *see also Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) ("Nor have we accepted the proposition that education is a 'fundamental right,' . . . which should trigger strict scrutiny when government interferes with an individual's access to it."). Furthermore, several Courts have held, in response to public health measures raised in response to the instant global pandemic, that there is no fundamental constitutional right to not wear a mask. *Klaassen v. Trustees of Indiana Univ.*, 2021 WL 3073926, at *38 (N.D. Ind. July 18, 2021), *vacated and remanded with instructions to dismiss as moot*, *Klaassen v. Trustees of Indiana Univ.*, No. 21-2326, 2022 WL 213329 (7th Cir. Jan. 25, 2022); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, No. 21-31, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places."); *United States v. Berglund*, No. 21-cr-31, 2021 WL 1589548 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights."); *see also Cangelosi v. Sheng*, No. 20-1989, 2020 WL 5960682, at *2-3 (E.D. La. Oct. 8, 2020) (plaintiff failed to show how mask order violates any right to privacy or freedom of expression).

"Because students do not possess a fundamental right to attend school without wearing a mask or other face covering, the Plaintiffs' substantive due process claim is governed by the rational basis test." *Oberheim v. Bason*, No. 21-01566, 2021 WL 4478333, at *8 (M.D. Pa. Sept. 30, 2021); *see Stepien v. Murphy*, No. 21-13271, 2021 WL 5822987, at *5 (D.N.J. Dec. 7, 2021) ("Because the mask mandate does not target a suspect class or burden a fundamental right, it receives not strict scrutiny but rational-basis review."); *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) ("Rational basis is the proper standard of review for the mask mandate. The mandate neither discriminates against a protected class nor infringes a fundamental right.").

Under rational basis review, the mask mandate is "accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). The mask mandate is constitutional if it (1) promotes a "legitimate governmental purpose" and (2) there is a "rational relationship between" that purpose and the means chosen by the government. *Id.* at 320. The second prong does not require the chosen means to promote the government's purpose "with mathematical nicety." *Id.* (internal quotation marks omitted). "Where there are plausible reasons for [the government's] action, [the] inquiry is at an end." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993). "It is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [government]." *Beach Commc'ns*, 508 U.S. at 315.

Here, the mask mandate satisfies both prongs of the rational basis test. The government has a compelling interest to protect the public from the spread of COVID-19 during the ongoing pandemic. *Denver Bible Church*, 494 F. Supp. 3d at 828. The mask mandate is a rational measure designed to accomplish that goal in the context of public schools. *See Oakes v. Collier Cty.*, No. 20-568, 2021 WL 268387, at *3 (M.D. Fla. Jan. 27, 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19."); *see also Denis v. Ige*, 538 F. Supp. 3d 1063, 1076-78 (D. Haw. 2021) (mask mandate survives rational basis scrutiny). The district judge has already found that wearing a mask in public places serves the "state's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial." *Miranda*, 2021 WL 4352328, at *6 (citing  *Roman Catholic Diocese* 141 S. Ct. 63, 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest.")). "Indeed, at this point in the pandemic, a nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it." *Miranda*, 2021 WL 4352328, at *6 (citation omitted).

Plaintiff's substantive due process claim fails because Plaintiff's minor children do not have a fundamental right to not wear a mask in public schools and the mask mandate survives rational basis review.

### iii.    ADA Claims

Counts VI and VII purport to raise claims under the Americans with Disabilities Act of 2008 ("ADA"). (R. Doc. 7 at 42-43). Plaintiff merely quotes language from ADA regulations prohibiting discrimination, or denial of participation, on the basis of disability at a place of public accommodation. *See* 28 CFR § 36.201(a), 28 CFR § 36.202(a).

It appears that Plaintiff is alleging a claim under Title III of the ADA, which provides, in pertinent part, that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To state a claim under Title III of the ADA a plaintiff must show: (1) that he is disabled as defined by the ADA, 42 U.S.C. § 12102(2); (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability." *Mosley v. Midas Worthington, LLC*, No. 19-75, 2020 WL 113350, at *8 (M.D. La. Jan. 9, 2020) (citing 42 U.S.C. § 12182(a); *Smith v. Bastrop Med. Clinic, P.A., Inc.*, No. 11-330, 2011 WL 3844223, at *4 (W.D. Tex. Aug. 29, 2011), *subsequently aff'd sub nom. Smith v. Bastrop Med. Clinic, P.A.*, 465 F. App'x 389 (5th Cir. 2012)).

Given that the School Board is a public entity, Plaintiff cannot state a claim for relief under Title III of the ADA. The Court will, therefore, assume that Plaintiff is attempting to raise a claim under Title II of the ADA, which pertains to public entities. "A plaintiff states a claim for relief under Title II if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the

benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011); *see* 42 U.S.C. § 12132.

Plaintiff fails to state a claim under Title II of the ADA. The pleadings fail to allege specific facts in support of a finding that Plaintiff's minor children have a disability as defined by the ADA or that Defendants discriminated against Plaintiff or her children in light of those disabilities. At most, Plaintiff alleges that because of the mask mandate, "otherwise healthy children are systematically regarded to possess respiratory impairments and to suffer discriminatory practices while not afforded the legal protections and accommodations provided by the Americans with Disabilities Act." (R. Doc. 7 at 28). The pleadings contain no allegations that M.M. and S.M. were determined to "possess respiratory impairments" or otherwise suffered from any medical conditions recognized as disabilities under the ADA. The pleadings do not allege that M.M. and S.M. suffer from ADA-recognized disabilities, that they sought any accommodations for such disabilities, that they were denied any sought accommodations, or that they were retaliated against for seeking accommodations.

Plaintiff has failed to state a claim under the ADA.[15]

### iv.    The Nuremburg Code

Count IX raises an alleged violation of the Nuremberg Code by simply quoting passages, including the statement that "voluntary consent of the human subject is absolutely essential." (R. Doc. 7 at 43-44). The Nuremberg Code is "a set of medical principles for ethical human

---

[15] Because Plaintiff does not alleged any disabilities, the Court need not whether Plaintiff was required to allege exhaustion of administrative remedies. To be clear, however, " [w]here a plaintiff raises claims under the ADA or Rehabilitation Act in the context of seeking redress for a school's failure to provide a [free appropriate public education]," the exhaustion requirement of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(*l*), is implicated even if the complaint is "not phrased or framed in precisely that way." *E.T. v. Paxton*, 19 F.4th 760, 767 (5th Cir. 2021) (quoting *Fry v. Napoleon Cmty. Schs.*, --- U.S. ---, 137 S. Ct. 743, 755, (2017)); *see also Hayes v. DeSantis*, No. 21-22863, 2021 WL 4236698, at *6 (S.D. Fla. Sept. 15, 2021) ("Where claims arising under the ADA and Rehabilitation Act are asserted in the context of public education, the question of whether administrative exhaustion requirement under the IDEA is implicated.")  (citing 20 U.S.C. § 1401(3)(A)(i)).

experimentation laid out in an opinion issued by one of the military tribunals at the Nuremberg

Trials of Nazi doctors convicted of war crimes and crimes against humanity for conducting medical

experiments on persons against their will." *Strong v. Zucker*, No. 21-6532L, 2022 WL 245351, at *1

(W.D.N.Y. Jan. 27, 2022) (citing *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 177-78 (2d Cir. 2009).

Plaintiff makes no attempt to even plead a private cause of action that would be recognized under

customary international law. *See Doe v. Franklin Square Union Free Sch. Dist.*, No. 21-5012, 2021

WL 4957893, at *20 (E.D.N.Y. Oct. 26, 2021) ("Citing the

Nuremberg Code, plaintiff argues that the Mask Mandate [in New York State's public schools]

violates the international norm that one cannot be coerced into medical experimentation without

consent. The Mask Mandate is not an experiment or clinical trial; it is a school safety measure.

Recasting it as an unlawful human experiment is an irrational leap of logic.") (citations omitted);

*Johnson v. Brown*, No. 21-1494, 2021 WL 4846060, at *11 (D. Or. Oct. 18, 2021) (plaintiffs did not

show that state-law requirement that educational and health care workers be vaccinated against

COVID-19 "implicate the *jus cogens* norm [of international law purportedly recognized by the

Nuremberg Code] to be free from coerced medical experimentation.").

  Furthermore, courts have refused to even analyze the "base analogy" between employer

mandates for "the federally approved COVID-19 vaccine to the inhumane and often deadly medical

experiments conducted by the Nazis." *McCutcheon v. Enlivant ES, LLC*, No. 21-00393, 2021 WL

5234787, at *3 (S.D.W. Va. Nov. 9, 2021); *see also Bridges v. Houston Methodist Hosp.*, 543 F.

Supp. 3d 525 (S.D. Tex. 2021) ("Equating the injection requirement to medical experimentation in

concentration camps is reprehensible."); *Anderson v. United Airlines, Inc.*, No. 21-1050, 2021 WL

6337144, at *7 (M.D. Fla. Dec. 30, 2021) ("Covid-19 vaccine mandates are simply not equivalent to

the forced experimentation on concentration camp victims that led to the writing of

the Nuremberg Code."). It is similarly proper to refuse to analyze the base analogy between mask mandates and the horrors of forced medical experimentation by the Nazis.

Plaintiff has failed to state any cognizable federal claim with respect to the Nuremberg Code.

**v.    42 U.S.C. § 1343**

Count X alleges that she seeks relief under 42 U.S.C. § 1343 because she "is aggrieved of injury to her person because of the deprivation of any right or privilege that was revoked" by Defendants while acting under the color of law "to support unconstitutional mandates." (R. Doc. 7 at 44). It appears that Plaintiff is seeking to allege a cause of action under 42 U.S.C. § 1343(a)(1), which provides that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in [42 U.S.C. § 1985]).

As discussed above, Section 1343 is a jurisdictional statute. As a jurisdictional statute, it does not provide "a private right of action." *Uziel v. Superior Ct. of California*, 857 Fed. App'x 405, 406 (9th Cir. 2021); *see also Bansal v. Lamar Univ.*, No. 02-322, 2002 WL 32075771, at *3 (E.D. Tex. Aug. 27, 2002) (Section 1343 does "not confer substantive federal rights enforceable in private civil litigation."), *subsequently aff'd sub nom. Bansal v. Lamar Univ., Beaumont, Texas*, 93 F. App'x 590 (5th Cir. 2004); *see also Davis v. Countrywide Home Loans*, No. 09-8606, 2010 WL 3219306, at *7 (S.D.N.Y. July 23, 2010) (Section 1343 does not give "rise to an independent claim or create[] a substantial right apart from the right to assert certain claims in federal court."), *report and recommendation adopted*, 2010 WL 3219304 (S.D.N.Y. Aug. 13, 2010).

Given the allegations, the Court will further assume that Plaintiff is also attempting to assert a substantive claim under 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive a person of

30

equal protection of the laws or of equal privileges and immunities under the laws on the basis of race." *See Jackson v. Biedenharn,* 429 F. App'x 369, 372 (5th Cir. 2011) (citing 42 U.S.C. § 1985(3)). "To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City,* 607 F.3d 992, 1002 (5th Cir.2010) (citing *Hilliard v. Ferguson,* 30 F.3d 649, 652-53 (5th Cir. 1994)). "Additionally, the conspiracy must also have a racially based animus." *Id.* (citing *Hillard*, 30 F.3d at 653). Here, Plaintiff has not alleged sufficient facts to support any alleged "conspiracy," much less that the alleged "conspiracy" had a racially-based animus.

Plaintiff has failed to state a claim under 42 U.S.C. § 1343 (or 42 U.S.C. § 1985).

### vi.    The Remaining State Law Claims

The Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts I, II, V and VIII). Where the Court has original jurisdiction, it may generally exercise "supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same cause or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court may decline to exercise supplemental jurisdiction, however, under Section 1367(c), which provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Given that all of Plaintiff's federal claims are subject to dismissal, the Court can properly exercise its discretion in declining supplemental jurisdiction over all remaining state

law claims. *See Raskin*, 2021 WL 5396001, at *4 (declining exercise of supplemental jurisdiction where the state claims involved "novel issues of state law and policy related to COVID-19").

### D.    Defendants' Motion to Strike Affidavit

Defendant seeks dismissal of the Affidavit of Stephen E. Petty, as well as portions of the Complaint that cite and quote the Affidavit, because these statements are "irrelevant, unauthenticated, hearsay opinions of the unadmitted expert, as these are not proper pleadings or admissible, material evidence for the record." (R. Doc. 19-1 at 24).

The Court has found it proper to dismiss all of Plaintiff's claims without addressing the assertions made by Mr. Petty in his Affidavit. Accordingly, this relief is properly denied as moot.

### E.    Attorney's Fees

While Plaintiff has raised a claim for attorney's fees, she does not state the source of law from which such fees are awardable. Having considered the pleadings as a whole, the Court will presume that Plaintiff is seeking an award of attorney's fees under 42 U.S.C. § 1988 as the prevailing party on Plaintiff's Section 1983 claims.[16]

Defendants assert that they should be awarded reasonable attorney's fees as costs because they are the "prevailing party" with respect to Plaintiff's Section 1983 action. Section 1988 provides that in "any action or proceeding to enforce a provision" of Section 1983 "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Under this statute, "[t]he district court should award the prevailing defendant attorney's fees only if the Plaintiffs' action was 'frivolous, unreasonable, or without foundation.' " *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (quoting *White v. South Park Indep. School Dist*.,

---

[16] Louisiana law provides that attorney's fees are not awardable unless expressly stated in a written contract or statute, which are not pled. *Sher v. Lafayette Ins. Co*., 988 So.2d 186 (La. 2018).

693 F.2d 1163, 1169-70 (1982)). "A suit is frivolous if it is 'so lacking in arguable merit as to be groundless or without foundation . . . .' " *Walker*, 168 F.3d at 240 (quoting *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1140-41 (5th Cir. 1983). "In determining whether a suit is frivolous, the district court should look to factors such as whether the Plaintiffs established a prima facie case, whether the defendant offered to settle, and whether the court dismissed the case or held a full trial." *Walker*, 168 F.3d at 240 (citing *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)). Additionally, "[a] plaintiff's claim may be frivolous, unreasonable, or groundless if the claim is barred by state sovereign immunity, or is moot[.]" *CRST Van Expedited, Inc. v. E.E.O.C.*, 194 L. Ed. 2d 707 (2016) (citations omitted).

It is unclear whether a defendant in a Section 1983 action is a "prevailing party" where the action is dismissed on the basis of mootness. *CF Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 377 (5th Cir. 1990) ("Federal courts have firmly established, however, that a civil rights *plaintiff* may 'prevail'" in a case that is settled or otherwise becomes moot before the court renders a judgment on the merits.") (emphasis added). It is clear, however, that Plaintiff is not a prevailing party because there is no evidence that the filing of this lawsuit caused Defendants to "remedy" the alleged constitutional violations by modifying the mask mandate. *See Savidge v. Fincannon*, 836 F.2d 898, 904-05 (5th Cir. 1988) (to qualify as a "prevailing party" in a moot lawsuit, the plaintiff must demonstrate that they (1) have received "a substantial part of the injunctive relief they sought from the defendants" and (2) that this relief was a causally related to the litigation).

Even assuming the Defendants can be considered the "prevailing party" in this action, the Court finds no basis for an award of attorney's fees under 42 U.S.C. § 1988(b). While a great deal of Plaintiff's allegations are patently frivolous – the Section 1983 allegations raised in this action are alleged due process violations in light of an allegedly unconstitutional mandate that students

33

where masks in public schools in Ascension Parish. While their mother may not have had capacity to sue on their behalf *pro se*, the minors subject to the mask mandate have asserted violations of their Constitutional rights to due process. These claims are not patently frivolous. Under these circumstances, and in an exercise of its discretion, the Court finds an award of attorney's fees to the Defendants, even if they can be deemed the "prevailing party" in this action, to be improper.

## III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion to Change Status from Pro Se to Sui Juris and Affidavit (R. Doc. 21) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Dismiss, Motion to Strike, and Motion for Attorney's Fees (R. Doc. 19) be **GRANTED IN PART and DENIED IN PART**, and that Plaintiff's federal claims be **DISMISSED WITH PREJUDICE**, and Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**.

Signed in Baton Rouge, Louisiana, on February 24, 2022.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**